**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Nationwide Mutual
Insurance Company

      v.                                     Civil No. 07-cv-241-PB

George Copadis, in his official
capacity as Commissioner,
New Hampshire Department of Labor

**REPORT AND RECOMMENDATION**

This action arises out of a claim for benefits made by
Jeffrey Holmes ("Holmes"), who is not a party here, based on his
previous employment with plaintiff, Nationwide Mutual Insurance
Company ("Nationwide").  In a separate action, Mr. Holmes seeks
to obtain unpaid vacation benefits earned during the calendar
year 2005.  He initiated a claim for those benefits by filing a
complaint against Nationwide with the New Hampshire Department of
Labor ("NHDOL"), which Nationwide removed to this court on June
18, 2007, pursuant to 28 U.S.C. § 1441.  See Holmes v. Nationwide
Mut. Ins. Co., Civil No. 07-184-SM.  Despite the statutory
provision directing the state court to proceed no further with
the action, see 28 U.S.C. § 1446(d), the NHDOL scheduled a
hearing on the matter for June 21, 2007, which was continued to

August 9, 2007.  Nationwide then brought the instant suit against the NHDOL, seeking a temporary restraining order and permanent injunction to prevent the NHDOL from continuing to hear Holmes' claim, and a declaratory judgment that all of the NHDOL's actions taken since the removal are void.  Defendant objects, claiming it is not a "State court" within the meaning of 28 U.S.C. § 1446(d), and that the claimed benefit is not based on a self-funded employee welfare benefit plan within the purview of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA").

Nationwide's request for injunctive relief was referred to me for a Report and Recommendation.  See 28 U.S.C. §636(b)(1)(B).  An evidentiary hearing was held on August 9, and continued on August 14, 2007.   For the reasons set forth below, I recommend that plaintiff's request be denied in part and granted in part.

Facts

Jeffrey Holmes' claim filed with the NHDOL is based on benefits he accrued in 2005, before Nationwide implemented the employee welfare benefits plan that was in effect when Holmes' employment with Nationwide ended in 2007.  Since January 2, 2006,

2

Nationwide has provided its employees with a paid time off benefits program, entitled the "Nationwide Insurance Companies and Affiliates Plan for Your Time and Disability Income Benefits."  <u>See</u> Exhibit 1 (the "Your Time Plan").  The hearing focused on the Your Time Plan and whether or not Holmes' benefit claim arises under that plan.

At the hearing, Nationwide's Assistant Vice President of Benefits Planning, John Towarnicky ("Towarnicky"), testified about the details of the Your Time Plan and how it evolved from previous Nationwide benefit plans.  Towarnicky explained that in 1994 Nationwide first began considering changing its benefits plan, from a "specific use" time off program, where leave time was granted based on identified categories such as vacation time, sick time, and personal time, to a "paid time off" program, where leave time would be earned on a biweekly basis and available to be used however the employee chose.  The Your Time Plan combines the previously existing "Disability Plan" with two new benefit programs:  "the Your Time Program and the Short-Term Disability Income Benefit Program[,]" which jointly are "intended to be a welfare benefit plan under ERISA."  <u>Id.</u>, Preamble at i.

The Your Time Plan addresses how employees may use leave

time that has accrued but has not yet been spent.  See id., §§ 2.02, 2.03.08 & 2.04.  The plan expressly accounts for leave time benefits that had accrued but had not been used when the plan became effective on January 2, 2006, by crediting employees a "Transition Amount" of leave time of up to 15 days for any vacation time that was unused as of January 1, 2006.  See id. § 2.02.01.02(a).  Any accrued but unused time in excess of 15 days, however, was forfeited under the Your Time Plan.  See id. § 2.02.01.02(c).  Similarly, the Your Time Plan allows up to 15 days to be carried over from one calendar year into the next calendar year, but time accrued in excess of 15 days is forfeited.  The plan also explicitly provides that such carryover hours will be forfeited upon termination of employment, regardless of the reason for termination.  See id. § 2.04.01(b).  An employee's time that accrues during the current year and any "opening balance," however, are payable upon termination, provided the employee satisfies certain conditions.  Id. § 2.04.01(a).  The Your Time Plan also sets forth the order in which Your Time balances -- i.e., opening balances, carryover balances and current plan year accrual balances -- are reduced. Id. § 2.03.02.

4

Towarnicky testified in some detail about how the Your Time Plan is administered and funded.  Nationwide has a Benefits Administrative Committee ("BAC") that consists of at least three director, or higher, level employees who are appointed by Nationwide's board of directors, and acts as the Plan Administrator.  The BAC is charged with interpreting and adjudicating the welfare plans and any appeals therefrom, in accordance with the terms of the relevant employee welfare benefit plan document.  See Exhibit 2.  The BAC members have the fiduciary duty to administer the benefit plans "solely in the interest of the participants and beneficiaries 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity familiar with such matters would use in the conduct of an enterprise of like character and with like aims.'"  Id. (quoting ERISA § 404(a)).  Towarnicky testified that Nationwide outsources the daily administration of claims, which enables the BAC to focus its energies on managing the trust that funds the payments due and hearing appeals from claimants.

Towarnicky also explained how the Your Time Plan is funded. Biweekly, both Nationwide and its employees who are eligible to

participate in the plan, referred to as "eligible associates," make contributions into a trust fund, to cover benefits as they are claimed.  <u>See</u> Exhibit 4.  That trust fund is insured up to $100 million, in the event the BAC mismanages the funds or some catastrophic event causes benefits to be claimed in excess of the funds in the trust.  Finally, Nationwide also has a fidelity bond which guarantees payment of accrued and unused benefits.  The combined value of the insurance policy and fidelity bond greatly exceeds the aggregate contingent liabilities of the plan; however the actual cash value of the fund only approximates the current accrued benefits liability, in order to keep the Your Time Plan in compliance with ERISA and avoid any potential tax liability that would arise if the fund's assets exceeded the plan's contingent liabilities.  <u>See</u> Exhibits 5, 6, 9 and 10 (tax return forms reporting the financial position of the plan for 2005 and 2006).

Towarnicky was questioned about whether the fund's assets adequately covered its contingent liabilities, in particular prior to the Your Time Plan being implemented on January 2, 2006. The evidence showed that as of December 31, 2005, the plan had approximately $7.3 million dollars as its year-end balance, <u>see</u>

Exhibit 9 (Form 5500 for 2005, Schedule 1, p. 4), and that approximately $7.86 million was contributed to the Your Time Plan fund at the beginning of 2006.  <u>See</u> Exhibit 13.  Towarnicky explained that this number may be lower than expected, because only California employees were eligible to participate in the plan in 2005 and only limited accrued leave time benefits were carried over from the previous plan into the Your Time Plan that became available to all Nationwide's employees on January 2, 2006.  The tax return for 2006 shows that although the gross revenue for the plan was just over $183 million, the net assets at year end were $58,878,103, because more than $164 million in benefits were actually paid out during that calendar year.  <u>See</u> Exhibit 6 (2006 Form 990 draft tax return).  Towarnicky explained that the $58.9 million balance at year end approximated the estimated $60 million in potential liabilities the plan had accrued as of December 31, 2006.  Towarnicky testified that these figures demonstrate that the Your Time Plan is fully funded.

<u>Analysis</u>

**I.  Motion for Temporary Restraining Order (document no. 3)**

Nationwide moves for a temporary restraining order ("TRO")

and permanent injunctive relief against the NHDOL.  TROs are
governed by Fed. R. Civ. P. 65(b) and may be granted:

> without written or oral notice to the adverse
> party or that party's attorney only if (1) it
> clearly appears from specific facts shown by . . .
> verified complaint that immediate and irreparable
> injury, loss, or damage will result to the
> applicant before the adverse party or that party's
> attorney can be heard in opposition, and (2) the
> applicant's attorney certifies to the court in
> writing the efforts, if any, which have been made
> to give the notice and the reasons supporting the
> claim that notice should not be required.

Fed. R. Civ. P. 65(b).  The rule expressly limits the duration of
of a TRO to not more than 10 days unless the party against whom
it is issued consents to an extension of time.  If the TRO is
granted without notice, then the matter must be "set down for
hearing" as a preliminary injunction.  See id.

Under the circumstances here, I find Nationwide's request is
more appropriately treated as a motion for preliminary injunctive
relief.  See e.g. Chilcott v. Orr, 747 F.2d 29, 32 (1st Cir.
1984) (treating motion for TRO as one for preliminary injunction
and holding an evidentiary hearing).  Several reasons support
this conclusion.  First, Nationwide wants the NHDOL enjoined from
any further proceedings on Holmes' claims, rendering the 10 day
TRO relief wholly inadequate.  Second, Nationwide did not support

8

its motion with a verified complaint showing that irreparable harm would be suffered *before* the NHDOL could be heard, and did not certify the efforts it made to provide notice to the NHDOL as required by the rule.  Instead, Nationwide actually served the NHDOL a copy of its motion.  The NHDOL, therefore, in fact had notice of Nationwide's request, appeared at the hearing represented by counsel, and was given a full and fair opportunity to present both facts and arguments in support of its position. When the adverse party has had notice, time to prepare, and a full opportunity to be heard, as was the case here, the motion may properly be treated as one for a preliminary injunction.  See Polar Corp. v. Coca-Cola Co., 871 F. Supp. 1520, 1521 (D. Mass. 1994); see also Stanton ex rel. Stanton v. Brunswick Sch. Dep't, 577 F. Supp. 1560, 1566 (D. Me. 1984).  Accordingly, Nationwide's motion will be analyzed as a request for a preliminary injunction.

## 2.  Motion for a Preliminary Injunction

Preliminary injunctive relief is available to protect the movant from irreparable harm pending final resolution of the dispute, which occurs when some harm from the challenged conduct could not be adequately redressed with traditional legal or

equitable remedies following a trial.  See <u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 18 (1st Cir. 1996) (finding irreparable harm where legal remedies are inadequate); <u>see also</u> <u>Acierno v. New Castle County</u>, 40 F.3d 645, 653 (3rd Cir. 1994) (explaining irreparable harm and its effect on the contours of preliminary injunctive relief).  The purpose of preventing irreparable harm is to enable the court to render a meaningful disposition on the underlying dispute.  See <u>CMM Cable Rep. v. Ocean Coast Props.</u>, 48 F.3d 618, 620-1 (1st Cir. 1995) (explaining the purpose of enjoining certain conduct as being to "preserve the 'status quo' . . . to permit the court more effectively to remedy discerned wrongs").  The court's focus, therefore, must always be on the underlying merits of the case, and what needs to be done to ensure that the dispute can be meaningfully resolved.

A preliminary injunction cannot issue unless the moving party satisfies four factors which establish its need for such relief.  See <u>Esso Standard Oil Co. v. Monroig-Zayas</u>, 445 F.3d 13, 17-18 (1st Cir. 2006) (discussing the requisite showing to obtain a preliminary injunction); <u>see also</u> <u>Ross-Simons of Warwick, Inc.</u>, 102 F.3d at 18-19 (explaining the burden of proof for a

10

preliminary injunction).  Those factors are:  "(1) the likelihood

of success on the merits; (2) the potential for irreparable harm

[to the movant] if the injunction is denied; (3) the balance of

relevant impositions, i.e., the hardship to the nonmovant if

enjoined as contrasted with the hardship to the movant if no

injunction issues; and (4) the effect (if any) of the court's

ruling on the public interest."  Esso Standard Oil Co., 445 F.3d

at 18.  If the plaintiff is not able to show a likelihood of

success on the merits, the remaining factors "become matters of

idle curiosity," id., insufficient to carry the weight of this

extraordinary relief on their own.  See id. (the "sine qua non of

this four-part inquiry is likelihood of success on the merits")

(internal quotation omitted).  Yet, "the predicted harm and the

likelihood of success on the merits must be juxtaposed and

weighed in tandem."  Ross-Simons of Warwick, Inc., 102 F.3d at

19.

### A.  Likelihood of Success on the Merits

Nationwide argues it is likely to succeed on its effort to

enjoin the NHDOL from proceeding with Holmes' claim, because the

claim is preempted by ERISA and was properly removed to this

court in the related action, No. 07-cv-184-SM.  The NHDOL

responds that it may still exercise jurisdiction over Holmes'
claim, because the claim is one for wages, arising under N.H.
Rev. Stat. Ann. ("RSA") 275:53 (1999), and it is not a "State
court" within the meaning of 28 U.S.C. § 1446(d).  I address each
argument in turn.

### 1.  ERISA Preemption

Whether or not Holmes' claim before the NHDOL is preempted
by ERISA depends on whether the state law claim arises out of a
Nationwide employee welfare benefit plan that is covered by
ERISA.  If it does, then ERISA expressly preempts "any and all
State laws insofar as they may now or hereafter relate to any
employee benefit plan described [in the statute]."  29 U.S.C. §
1144(a).  A state claim is deemed related to an employee benefit
plan and, therefore, preempted by ERISA where either (1) it
requires "'the court's inquiry [to] be directed to the plan,'" or
(2) "it conflicts directly with ERISA."  Carrasquillo v.
Pharmacia Corp., 466 F.3d 13, 20 (1st Cir. 2006) (quoting
Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140-42 (1990)).
"[U]nder the doctrine of 'complete preemption,' ERISA's civil
enforcement provisions, 29 U.S.C. § 1132(a), have been
interpreted to establish federal removal jurisdiction over any

12

state law claims that in substance seek relief that is otherwise

within the scope of those ERISA remedy provisions." <u>Hotz v. Blue</u>

<u>Cross & Blue Shield of Mass.</u>, 292 F.3d 57, 59 (1st Cir. 2002)

(citing <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63–67

(1987)).  In fact, ERISA provides for a beneficiary, like Holmes,

"to recover benefits due . . . under the terms of [the] plan, to

enforce . . . rights under the terms of the plan, or to clarify .

. . rights to future benefits under the terms of the plan."  29

U.S.C. § 1132(a)(1)(B).  Because Holmes' wage claim can only be

determined by assessing how the Your Time Plan dealt with past

accrued benefits, the claim would appear to be preempted by

ERISA, so long as the Your Time Plan is an ERISA plan.  <u>See</u>

<u>Carrasquillo</u>, 466 F.3d at 20 (finding ERISA preemption of claim

that could only be resolved by consulting the benefits plan).

It is clear from Towarnicky's testimony that Nationwide's

employee benefit plan is precisely the type of plan covered by

ERISA.  Nationwide clearly intends to operate the plan as an

ERISA-qualifying welfare plan.  <u>See</u> Exs. 1 & 2.  The intention is

manifested in the manner the plan is funded and operated, <u>see</u> Ex.

4, as well as in the relationship of the fund with the Department

of Labor and the Internal Revenue Service, <u>see</u> Exs. 5 & 6.  <u>See</u>

McMahon v. Digital Equip. Corp., 162 F.3d 28, 33-34 (1st Cir. 1998) (describing characteristics of benefits plans that qualify them as ERISA plans); cf. Ala. Airlines v. Or. Bureau of Labor, 122 F.3d 812, 814-15 (9th Cir. 1997) (finding sick leave paid out of corporation's general assets as a payroll practice rather than an ERISA plan).  The evidence adduced at the hearing readily demonstrated that the Your Time Plan is a qualified employee welfare benefit plan encompassed by ERISA and not a payroll practices plan outside ERISA's preemptive scope.  See McMahon v. Digital Equip. Corp., 998 F. Supp. 62, 66-67 (D. Mass.), aff'd. 162 F.3d 28 (1st Cir. 1998) (finding plans funded by a trust and insurance, and secured by a fidelity bond, rather than from general corporate assets satisfy ERISA).

        The defendant argues that ERISA does not apply to Holmes' claim, because it involves a vacation plan effective before the ERISA-covered Your Time Plan.  The Your Time Plan, however, clearly dealt with employees' unused vacation hours as of January 1, 2006, and explicitly provided that up to 15 days of time would be carried forward as a "Transition Amount" benefit.  See  Ex. 1, § 2.02.01.02.  Because the state wage claim requires the court to look at the Your Time Plan, it is preempted by ERISA.  See

14

Carrasquillo, 466 F.3d at 20 (explaining state claims are related to an employee benefit plan and exempted by ERISA if resolution of the claim requires "the court's inquiry [to] be directed to the plan" (internal quotation omitted)).

The defense also argues that certain employer plans which compensate employees for vacation benefits out of the employer's general assets are employer payroll practices not covered by ERISA.  See 29 C.F.R. §2510.3-1(b)(2).  While this may be true, it is inapposite to the facts at hand.  The evidence adduced at the hearing established a self-funding plan, secured by both an insurance policy and a fidelity bond.  Moreover, Towarnicky testified that vacation time under the Your Time Plan is paid from the Your Time Program self-funded plan.  Cf. id.; see also Massachusetts v. Morash, 490 U.S. 107, 116 (1989) (discussing benefits programs covered by ERISA and the types of regular compensation not covered by the statute).

From both the hearing testimony and the ordinary course of business, it is fair to attribute at least constructive knowledge of the Your Time Plan to Holmes.  As a Nationwide sales manager, he would have been given a copy of the plan and can be presumed, at least, to have constructive knowledge of the plan.  See Exs. 7

& 8 (summary of the plan and accompanying resource guide); <u>see</u>
<u>also</u> <u>O'Connor v. Commonwealth Gas Co.</u>, 251 F.3d 262, 271 n.10
(1st Cir. 2001) (quoting <u>Bins v. Exxon Co.</u>, 189 F.3d 929, 939
(9th Cir. 1999) for the proposition that "once an employer-
fiduciary seriously considers a proposal to implement a change in
ERISA benefits, it has an affirmative duty to disclose
information about the proposal to all plan participants . . . to
whom the employer knows . . . that information is material").[1]
Whether or not Holmes in fact fully understood his benefits under
the Your Time Plan, however, is immaterial to the determination
of whether it qualifies as an ERISA plan.  For purposes of this
preliminary inquiry, Nationwide has demonstrated that it is
likely to succeed on its claim that Holmes' challenged vacation
benefit is preempted by ERISA.

---

[1]Towarnicky also testified about Holmes' actual vacation
time accrued (Holmes was not at the hearing to testify on his own
behalf).  Based on Holmes' leave accrual records, Towarnicky
noted that Holmes carried forward 31 hours when the plan came
into effect, and that he took 155 hours of Your Time in 2006,
<u>see</u> Exh. 11; he therefore used those 31 accrued hours in 2006.
This makes more sense than the explanation offered by defendant
that vacation time accrued in 2005 remained until Holmes' 2007
termination.  Significantly, Towarnicky stated that this was
consistent with how vacation time accrued during the prior plan,
effective in 2005.

## 2.   State Agency or State Court

The NHDOL next argues that it is not a "state court" subject to the directive of the removal statute.  While there is a split of authority on whether the removal statute reaches adjudicatory proceedings before a state agency, in this Circuit a state agency which functions like a court may be considered to be a court for purposes of removal.  See Volkswagen de P.R., Inc. v. P.R. Labor Relations Bd., 454 F.2d 38, 43–44 (1st Cir. 1972) (finding labor relations board acted as a court when reviewing a claim arising under federal law); see also Floeter v. C.W. Transport., Inc. 597 F.2d 1100, 1101–02 (7th Cir. 1979) (per curiam) (holding the function of the tribunal, not its name, determines whether it acts as a "state court" for removal purposes); cf. Sun Buick, Inc. v. Saab Cars USA, Inc., 26 F.3d 1259, 1261–64 (3rd Cir. 1994) (canvassing law on whether administrative agencies may properly be deemed state courts and declining to follow the functionality test for purposes of removal).[2]  Critical to the

---

[2]Cases which have construed the removal statute narrowly and chosen to shield proceedings before state agencies from being removed to federal court have focused on two salient features of the state agency.  First, those courts have looked at the more administrative functions of the agency, which capitalize on the expertise of the agency for efficiently handling problems before it.  See Sun Buick, 26 F.3d at 1264–65 (focusing on regulatory

issue of whether the agency may be deemed a state court for

removal purposes are the administrative "board's procedures and

enforcement powers, the locus of traditional jurisdiction over

breaches of contract, and the respective state and federal

interests in the subject matter and in the provision of a forum."

Volkswagen de P.R., Inc., 454 F.2d at  44.  The focus of the

inquiry must be on the specific proceeding before the

administrative board.  See id.

     The NHDOL clearly performs its functions in an adjudicative

setting. See RSA 275:51, I (empowering the commissioner to hold

hearings, institute actions for penalties, and adjudicate claims

_____

and licensing power of state board of vehicles and its limited
enforcement powers); see also Bellsouth Telecomms., Inc. v.
Vartec Telecom, Inc., 185 F. Supp. 2d 1280, 1283 (N.D. Fla. 2002)
(looking at the usual responsibilities of policy, rate and
regulatory setting of the public service commission policy to
conclude it is a "quintessential administrative agency").
Second, those courts have relied on the state law issue involved,
which bolstered the state interest in the matter over the federal
interest.  See id. at 1282 (dispute over intrastate phone carrier
charges); see also Sun Buick, 26 F.3d at 1260 (claim for breach
of contract and violation of state franchise statute); cf.
Volkswagen de P.R., Inc., 454 F.2d at 44 (emphasizing the federal
interest in having a federal law claim heard in a federal forum).
Here, the NHDOL clearly acts as an adjudicatory board with full
enforcement powers, see RSA 275:51 (Supp. 2006), and the state
law claim appears clearly to be preempted by ERISA, see 29 U.S.C.
§ 1144(a).  When a state administrative agency is adjudicating a
claim that is preempted by a federal statutory scheme, the
federal interest exceeds that of the state and justifies
construing the removal statute to reach the action.

for wages due under the provisions of the statute).  Notice of a
hearing is given, the parties' presence is mandated, and evidence
is presented and examined, first by the claimant and then by the
employer.  <u>See</u> RSA 275:51, V.  The burden of proof is by a
preponderance of the evidence.  If an attorney is hired, s/he
must file an appearance.  The hearing is recorded and all parties
are placed under oath before testifying.  After the hearing
examiner makes a decision, reconsideration may be sought or an
appeal may be taken.  Because the NHDOL has both the procedures
and the power to enforce Holmes' wage claim, it falls squarely
within the concept of a "state court" as defined by <u>Volkswagen de
P.R., Inc.</u>.

        The NHDOL argues that it is not a state court within the
meaning of 28 U.S.C. § 1446(d) and, therefore, does not recognize
the stay provision as applying to it.  Men willingly believe what
they wish.  Equally, they have a right to be wrong.  In this
Circuit, such a state agency is considered functionally to be a
court.  <u>See</u> <u>id.</u>  Even more important is that a party who wishes
to question whether a civil action has been properly removed has
the burden of moving the removing court to remand the action to
the state court from whence it was purportedly wrongly removed.

In terms of portent, there are few federal statutes which clearly
command the type of plenary deference as the removal statute
commands.  Any misgivings about the propriety of the removal must
be addressed to the removing court, and not simply ignored as the
NHDOL appears to have done here.

    The above-discussion brings one full circle to the
following:  ERISA provides a comprehensive welfare benefit plan
providing for the decision-making process to be deposited with
the plan administrator, and review of those decisions is afforded
only under a limited judicial rubric.  "'Whether an ERISA plan
exists is a question of fact, to be answered in light of all the
surrounding facts and circumstances from the point of view of a
reasonable person.'"  McMahon, 162 F.3d at 36 (quoting Wickman v.
Nw. Nat'l Ins. Co., 908 F.2d 1077, 1082 (1st Cir. 1990) (internal
quotation omitted)).  There is a strong federal interest in
completely assuming subject matter jurisdiction over ERISA
issues; and, while the State agency may disagree, the removal of
Holmes' claim furthers that interest.  ERISA preemption includes
those issues which may address non-federal or state claims within
an ERISA framework.  See Forcier v. Metro. Life Ins. Co., 469
F.3d 178, 186 (1st Cir. 2006) (acknowledging that ERISA's

"'expansive pre-emption provisions' . . . were 'intended to ensure that employee benefit plan regulation would be "exclusively a federal concern."'" (quoting <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 208 (2004) (internal quotation omitted)). I readily conclude that Nationwide is likely to succeed on its argument that the NHDOL is a state court within the meaning of 28 U.S.C. § 1446(d) and, therefore, subject to its provisions.

### B.  Irreparable Harm

While it appears that Nationwide is likely to succeed on its removal claim, it has failed to demonstrate how it will suffer irreparable harm absent issuance of a preliminary injunction by this Court.  Nationwide argues that the NHDOL is violating the automatic stay provisions of 28 U.S.C. § 1446(d) by continuing to hear Holmes' claim.  Nationwide further argues that this statutory violation demonstrates its irreparable harm, without needing to make any further showing.  In support of that argument, Nationwide cites <u>Gov't of the V.I. v. V.I. Paving, Inc.</u>, 714 F.2d 283, 286 (3rd Cir. 1983), and <u>Long Term Pharmacy Alliance v. Ferguson</u>, 260 F. Supp. 2d 282, 289 (D. Mass. 2003), *vacated and remanded*, 362 F.3d 50 (1st Cir. 2004).[3]  The

---

[3]These cases stand for the proposition that when certain statutes are violated, the public is harmed, which necessarily

difficulty with Nationwide's argument, however, is that the very statutory provision it claims gives rise to its irreparable harm is providing the relief ultimately sought here.

Plaintiff already has prevailed in its request for injunctive relief.  A stay of state proceedings on Holmes' claim is in place.  The NHDOL has chosen to ignore the stay based upon its good faith, but perhaps myopic, reading of ERISA, and its understanding of the nature of payment for accrued vacation time under the Nationwide scheme.  My reading of § 1446(d) is that the state proceeding is stayed, by self-executing statutory authority

---

constitutes irreparable harm.  <u>See</u> <u>Gov't of the V.I.,</u> 714 F.2d at 286 (discussing how violations of environmental laws implicitly harms the public and causes irreparable harm); <u>see</u> <u>also</u> <u>Long Term Care Pharmacy Alliance</u>, 260 F. Supp. 2d at 289 (citing authority to support finding medicaid statutory violations necessarily inflict irreparable harm).  The court in these cases found the irreparable harm "hurdle" easy to clear given the clear public interest reflected in the statutory schemes involved.  <u>See</u> <u>Gov't of the V.I.,</u> 714 F.2d at 286.  Likewise, the removal statute reflects the public interest in expeditiously and efficiently resolving pending claims, without duplicate efforts in different forums or unnecessary shuttling between the state and federal forum.  <u>See</u>, <u>e.g.</u>, 28 U.S.C. §§ 1441, 1446 & 1447.  Nationwide correctly asserts that should the state agency hearing continue, improper complaints for benefits by other New Hampshire employees of Nationwide to the NHDOL will result in an end-run around ERISA, which would harm the public interest advanced by both ERISA's preemption provision and the removal statute's stay directive. Despite this, Nationwide cannot be irreparably harmed by the NHDOL issuing decisions which, by operation of federal law, are void.

and clear directive.  The sought-after injunctive relief in this
case is not required to enjoin proceedings at the NHDOL.  <u>See</u>
<u>Polyplastics, Inc. v. Transconex, Inc.</u>, 713 F.2d 875, 880 (1st
Cir. 1983) (explaining that § 1446(d) automatically stays state
proceedings without any action by the district court).
Nationwide's argument, that the NHDOL is not a party in the
related case, does not change my analysis, because a state court
also would not be such a party in a removed case.  That does not
change the authoritative power or practical effect of § 1446(d).

     It would be excess for the court to issue a preliminary
injunction against the NHDOL when, for all intents and purposes,
such an order has, by operation of law, been put in place in the
related case, whether the NHDOL wishes to recognize it or not.
Any further action by the NHDOL in relation to the removed claim
is void <i>ab initio</i>.  <u>See</u> e.g. <u>Rossello-Gonzalez v. Calderon-Serra</u>,
398 F.3d 1, 8, n.23 (1st Cir. 2004) (finding the state court
decision null and void because § 1446(d) removed that court's
jurisdiction over the matter); <u>see</u> <u>also</u> <u>Polyplastics, Inc.</u>, 713
F.2d at 880 (order staying state action is "essentially
declaratory of the statute").

     In light of the above, further analysis of the factors which

23

justify issuance of a preliminary injunction is not warranted.

Since the NHDOL is already enjoined as a matter of federal law,

plaintiff's motion for preliminary and permanent injunctive

relief is moot.  I, therefore, recommend that it be denied.


## Conclusion

For the reasons set forth above, I recommend that the motion

for injunctive relief be denied as moot.  <u>See</u> Document no. 3.  I

also recommend, however, that Nationwide's request for

declaratory relief be granted.  <u>See</u> Document no. 1.  I recommend

that declaratory judgment be entered in favor of Nationwide, to

the effect that all actions taken by the NHDOL with respect to

the claim of Jeffrey Holmes after removal to this court are void

*ab initio* and completely without effect, due to the applicability

of the statutory automatic stay provisions of 28 U.S.C. §1446(d)

in <u>Holmes v. Nationwide Mut. Ins. Co.</u>, Civil No. 07-0184-SM.

Any objections to this report and recommendation must be

filed within ten (10) days of receipt of this notice.  Failure to

file objections within the specified time waives the right to

24

appeal the district court's order.   See Unauthorized Practice of

Law Comm. v. Gordon, 979 F.2d 11, 13–14 (1st Cir. 1992);

United States v. Valencia–Copete, 792 F.2d 4, 6 (1st Cir. 1986).


                                        /s/ Justo Arenas
                                        Justo Arenas
                                        United States Magistrate Judge



Date: August 21, 2007

cc:    David C. Casey, Esq.
       James J. Oh, Esq.
       Christopher B. Kaczmarek, Esq.
       Lucy J. Karl, Esq.
       Nancy J. Smith, Esq.
       Anthony I. Blenkinsop, Esq.